### PEOPLE *v.* FLEMMING.

1. SEARCHES AND SEIZURES—INTOXICATING LIQUOR—SEARCH WARRANT—AFFIDAVIT—SUFFICIENCY.

An affidavit for a search warrant containing positive statements that "intoxicating liquors are manufactured, possessed, sold, furnished, and given away, contrary to law, in a one story frame house, painted white and trim-

On complaint and information based on information and belief as basis for issuance of warrant, see notes 10 L. R. A. (N. S.) 159; 25 L. R. A. (N. S.) 60.

med with blue, on the following described parcel of land, viz.: Lot No. 7 of Block No. 5, Pine Wood addition to the village of Rogers, Presque Isle county, State of Michigan, * * * occupied by one C. F. (defendant) as a private dwelling house and as a place for the manufacture and sale of liquor," followed by allegations that affiant had seen persons enter said premises sober and after remaining there a considerable time they became intoxicated, and many of them brought away bottles, etc., *held*, sufficient for the issuance of a search warrant, in the discretion of the magistrate.

2. SAME—DESCRIPTION OF PREMISES TO BE SEARCHED—SUFFICIENCY.
Where the affidavit and search warrant gave a distinctive description of defendant's dwelling house which particularly pointed it out as a definitely ascertainable place, the location of the house to be searched and the thing to be searched for being described in terms of reasonable certainty, which did not leave the place of search to the discretion of the officer, it is immaterial that the house was described as being located on lot 7 of block 5, in a certain addition, whereas in fact it was located on lot 6 of said block.

3. CRIMINAL LAW—TRIAL—INSTRUCTION THAT IT WAS DUTY OF JURY TO CONVICT IF THEY BELIEVED UNDISPUTED EVIDENCE NOT ERROR.
In a prosecution for violation of the liquor law, where the evidence of defendant's guilt was undisputed and conclusive if believed, the court was not in error in instructing the jury that if they believed beyond a reasonable doubt the evidence it was their duty to convict, especially in view of the further instruction that they could disobey said instructions and find a verdict the other way if they saw fit.

4. SAME—QUESTIONS OF LAW FOR THE COURT.
Where the jury, after retiring, returned into the court room and the foreman informed the court that they could not agree on the legality of the search and seizure by the State police in the absence of county officials, the court was not in error in instructing them that that was a question of law with which they had nothing to do, and again instructing them that if they believed, beyond a reasonable doubt, the undisputed evidence, it was their duty to convict.

Exceptions before judgment from Presque Isle; Emerick (Frank), J. Submitted January 12, 1923. (Docket No. 157.) Decided March 22, 1923.

Charles Flemming was convicted of violating the liquor law. Affirmed.

*I. S. Canfield,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *J. E. Converse,* Assistant Attorney General, for the people.

STEERE, J. Defendant was convicted in the circuit court of Presque Isle county of violating the liquor law under an information charging that on the 10th day of June, 1922, in the township of Rogers in said county he "did then and there unlawfully manufacture and have in possession a certain quantity of spirituous and intoxicating liquor, contrary to the form of the statute in such case made and provided," etc. The case is here for review on exceptions before sentence.

The principal evidence against defendant was secured under a search warrant issued by a justice of the peace of that county on an affidavit made by an officer of the State constabulary reading as follows:

"The affidavit of Floyd A. Martin of the city of Gaylord, county of Otsego, and State of Michigan, taken and made before me, C. S. Covey, a justice of the peace, of the township of Rogers, in said county of Presque Isle, upon the 6th day of June, A. D. 1922, who being by me first duly sworn, says that intoxicating liquors are manufactured, possessed, sold, furnished and given away, contrary to law, in a one story frame house, painted white and trimmed with blue, on the following described parcel of land, viz.: Lot No. 7 of block No. 5 of Pine Wood addition to the village of Rogers, Presque Isle county, State of Michigan, situated in the township of Rogers, in said county and State and occupied by one Charles

Flemming, as a private dwelling house and as a place for the manufacture and sale of liquor.

"That he, the said affiant, believes and has good reason to believe that the aforesaid intoxicating liquors, together with the vessels, containers, implements, furniture used in the illegal manufacture, possession, sale and furnishing, and storage of said intoxicating liquors are now concealed in the building on the premises afore described, contrary to law.

"That the facts supporting the belief of the affiant and upon which the foregoing allegations are made are as follows: That on the 24th day of May, A. D. 1922, at about the hour of 3 o'clock in the afternoon, affiant saw a man whose name is unknown to him drive past the above-named premises, in a car and saw him give a signal by holding up two fingers, and saw him return almost immediately and stop in front of the house on said premises, and then receive two quart bottles which were taken from under the porch of said house and delivered to him by——————— Flemming, a boy of about the age of 15 years and a son of the said Charles Flemming.

"That on the 30th day of May, A. D. 1922, in the evening and nighttime of that day affiant saw a great many cars drive up to said premises and stop there some of which remained for several hours and that the occupants of said cars were sober upon their arrival there, that they entered the said house and remained for a considerable time and while there became intoxicated and many of them brought bottles away from said premises.

"That on several nights between the 24th and 30th day of May, A. D. 1922, affiant saw a number of cars drive to said premises and the occupants thereof became intoxicated while there and brought away bottles.

"Wherefore, the said Floyd A. Martin prays for the issue of a warrant to an officer having power to serve criminal process, commanding him to search the premises described and if such liquors are there found to seize the same with the vessels in which they are contained and all the implements, furniture, vehicles and conveyances used and kept for such illegal manufacturing, selling, furnishing, giving away, possessing

and storing of such liquors and them safely keep and make immediate return on said warrant."

The search warrant followed the description of the premises set out in the affidavit. Armed with this the officers searched defendant's residence in Pine Wood addition to the village of Rogers and made return showing that they found in various receptacles, and seized, a quantity of intoxicating liquors, with certain mash and other material and equipment for manufacturing such liquor, including a distilling outfit concealed under the wood-shed floor. Complaint and warrant issued, examination was waived by defendant and on arraignment in the circuit court he refused to plead to the information filed against him. His counsel then interposed a special motion to suppress the testimony obtained by the officers while in and about defendant's residence for various reasons. The motion was denied and a jury impaneled. The intoxicating liquor, still, and other evidence secured under the search warrant were introduced in evidence against defendant's motion to suppress, and various objections interposed by his counsel. No testimony was offered by the defense. Defendant was convicted under the charge of unlawfully having intoxicating liquor in his possession. All questions raised were saved for review by proper motions, objections, and exceptions. They are stated in counsel's brief as follows:

"*First.* Those taken to the denial of respondent's motion to suppress evidence obtained under the warrant to search his dwelling house.

"*Second.* Those taken to the admission of testimony of the result of such search.

"*Third.* Those covering the denial of respondent's motion for a directed verdict in his favor and the court's instructions to the jury."

Upon its face the affidavit on which the search

warrant is based cannot be questioned. It contains abundant statement of facts showing probable cause for issuance of a search warrant, in the discretion of the committing magistrate. That feature of the controversy is fully covered and disposed of contrary to defendant's contention in *People* v. *Musczynski*, 220 Mich. 536, and cases there cited.

The further point is made that the house searched was located on lot 6, block 5, of Pine Wood addition, instead of lot 7 as stated in the affidavit and search warrant, for which reason the search and seizure were illegal under the recent ruling in *People* v. *Musk*, *ante*, 578. As defendant introduced no testimony upon the trial, the only showing of inaccuracy in that respect is in an affidavit of defendant's wife made in support of his preliminary motion to quash the proceedings, return the property taken, and suppress any testimony secured by the search warrant. She there stated their residence, which the officers searched and from which they took "a small quantity of liquor," is on lot 6 in block 5 of Pine Wood addition, and denied any illegal acts or the conduct of business of any character in or from said house, but does not deny that the house in which they resided and which the officers searched was "a one story frame house, painted white and trimmed with blue," located in block 5 of Pine Wood addition to the village of Rogers in said county, which the affidavit for search warrant states defendant occupied as a private dwelling house and as a place for the manufacture, sale, storage, etc., of intoxicating liquor, with confirming facts of what was seen at and around said house prior to the issue of the search warrant. Act No. 336, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 7079 [30]), authorizes on proper showing a search warrant against a private dwelling "being used for the unlawful manufacture or sale of intoxicating liquor."

In the *Musk Case* the premises directed to be searched were only described as "known and numbered 926 Elwood avenue in Muskegon Heights," occupied by defendant "as a place of public resort," while the officers executed the writ by searching a dwelling house "known and numbered 932 Elwood avenue." There was no showing that the dwelling searched was a place of public resort. In the instant case there is distinctive description of defendant's dwelling house which particularly pointed it out as a definitely ascertainable place. The location of the house to be searched and the thing to be searched for were described in terms of reasonable certainty which did not leave the place of search to the discretion of the officer, and there was a showing intoxicating liquor was unlawfully manufactured in the dwelling searched. The description of the house in the affidavit and facts shown by the testimony in this case present a very different situation from that in the *Musk Case*. The affidavit was sufficient and the house it described was searched.

On the trial the evidence of defendant's guilt was undisputed and conclusive if believed. The court rightly so advised the jury as a matter of law, but told them, in part:

"The judge has no right to usurp the province of the jury, to coerce a verdict, and after I have told you what your duty is under the law you can go right out and disobey these instructions and find a verdict the other way. You can do it. You ought not to do it. In this case you ought to find the respondent guilty, unless you absolutely disbelieve the testimony of all these witnesses."

On counsel for defendant taking exception to the rulings and charge of the court, the court referred to the rule as to reasonable doubt in criminal cases and further said:

"I omitted to state that, and I state it now, that if they believe beyond any reasonable doubt the evidence of these witnesses, that they found this liquor in the possession of Mr. Flemming, and in his house, and believe the testimony of Mr. Gaul that it contained over 50 per cent. of alcohol by content, if you believe that beyond a reasonable doubt you ought to find the respondent guilty.    *    *    *

"When you go to your jury room select one of your number as foreman to preside over your deliberations, and when you have agreed upon a verdict return into court and by the voice of your foreman say whether you find the respondent guilty or not guilty."    *    *    *

An officer was then sworn to take charge of the jury, which after being absent for a time returned into court and, as far as material to objections raised, the following took place:

"*The Court:*  Whom have you selected for foreman?

"*Juror:*  Your honor, I was selected.

"*The Court:*  Mr. Foreman, the sheriff informs me that you have not as yet agreed upon a verdict.

"*Foreman:*  Your honor, we can't agree, and there is no way of agreeing.  I don't think we can agree.

"*The Court:*  Well, Mr. Foreman, upon what question do the jury disagree?  Don't they understand the very plain instructions of the court?

"*Foreman:*  They do, your honor.  They do.

"*The Court:*  But they won't follow them, is that the idea?

"*Foreman:*  They follow them, your honor, but one idea, the State police made the raid himself and had no officials from the county with them to make this raid.  They can't agree on that subject.

"*The Court:*  It doesn't make a bit of difference. Now, there is a serious legal question involved in this case, gentlemen.  I have decided it once yesterday, and decided it again today, and I am going to give Mr. C. a chance to review that in the Supreme Court, as to whether this search warrant was issued upon such a showing as would justify the issuance of a warrant to search a dwelling house.    *    *    *
I have assumed the responsibility of deciding that in

favor of the validity of the warrant. I held yesterday on Mr. C.'s motion to quash the information, that the warrant was issued upon a valid showing, and so I held here today. * * * But the jury have got nothing to do with that. I have decided those questions. I have instructed the jury, and I instruct them again, that if they believe beyond a reasonable doubt that Mr. Charles Flemming had in his house there that day when the State policemen got in, this quantity of spirituous and intoxicating liquor of the alcoholic content testified to by Mr. Gaul of Alpena, that it is their duty to convict him, and so it is. It is the duty of every honest juror, if they believe that he had liquor there in his house—it is the duty of every honest juror to say so, and I will take care of these other questions about the pony men of the State police running around here, and whether that warrant was validly issued. Now you may retire, gentlemen."

The jury thereafter rendered a verdict of guilty.

The court committed no error in instructing the jury that as a matter of law it was their duty under the undisputed testimony to find defendant guilty, if they believed the witnesses who gave it. In so doing he distinctly told them in direct and plain terms which the dullest could not misunderstand that the court could not usurp their province by directing a verdict, but after instructing them as to their duty under the law, if they believed beyond any reasonable doubt the undisputed testimony of the witnesses, the court could not command what verdict they should render, that the responsibility and right to determine what their verdict should be rested with them. To emphasize what their duty as jurors was under the law if they believed the undisputed testimony was not directing a verdict nor coercion, when at the same time they were squarely told it was the jury's legal right to disregard the instruction of the court upon the law and render such verdict as they saw fit. When advised in open court by the foreman that their

deliberations had been permeated and confused by somebody's "idea" that search and seizure independently made by State police was an unlawful infringement on home talent, it was the right and duty of the court to disabuse their minds of that fallacy. That it was done in blunt and unmistakable language, which any evasive juror who might run to such a subterfuge could easily read as he ran, constituted no error.

The court was right in application of the law to the undisputed evidence, and did not usurp the province of the jury in plainly advising them of their duty as jurors. *People* v. *Neumann*, 85 Mich. 98; *People* v. *Chyc*, 219 Mich. 273.

The conviction is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.